TRIBBLE v. ELLISON.

**Antenuptial Contract.**

> Where parties in contemplation of marriage entered into an agreement by which their property was to be kept separate, and neither was to have an interest in the other's estate, and were not to claim courtesy or dower after death. *Held*, that by the terms of the contract the survivor could not retain the property in his own right, under the statute, as administrator of his deceased wife.

APPEAL FROM MADISON CIRCUIT COURT.

December 13, 1865.

OPINION OF THE COURT BY JUDGE WILLIAMS:

John Tribble and Sally Coffee, intending to marry soon, entered into the following antenuptial contract in writing, dated April 5, 1862:

> "Agreement between John Tribble and Sally Coffee: Witnesseth, that the parties have mutually agreed to get married and hereby undertake and covenant with each other to take upon themselves all the obligations and duties of the marital rites without reserve, but *each having property* they have come to the following agreement and *understanding in relation thereto:* The said Tribble is to have the exclusive use and control of the property of the said Sally Coffee during his natural life, but if the said Sally Coffee should die first she has the right to dispose of all her property by *will* or *otherwise* as she may think proper; but if the said Tribble should die first he has the right to dispose of all his property as he may choose, *and if he dies without will all his property* and its increase *is to go to his children* or *heirs* under the law then in force in regard to descents, and the said Sally Coffee hereby *relinquishes* all *claim to the same either as dower or otherwise,* and the said Tribble hereby relinquishes all claim to the separate property of the said Sally Coffee after her death if she should first die; and if the said Tribble should die first she is then to have the immediate possession and control of all her separate

property with all increase thereunto and no more; her separate property consisting —— one negro woman and five children, at present about $740 in cash notes, one mare, and some house furniture. For the fulfilment of the above agreement we have hereunto set our hand and seals this 5th day of April, 1865.

" Test                                        JOHN  TRIBBLE,
    " THOMAS C. TODD,                  SALLY  COFFEE.
    " SUSAN TODD."

When all the provisions of this antenuptial contract are regarded, though not as perspicuously set out as might have been, it is evident that the parties intended to provide that during their joint lives the husband should control the property of the wife, but this was really as trustee for it, and its increase was to be at her disposal by will or otherwise, that is by last will or by gift or sale during her life, and the survivor was to have no interest in the property of the party which might first die. Mrs. Coffee covenants to claim none of her intended husband's property as dower or by distribution at his death, but the same is to descend to his children or heirs, as provided by law, unless he should dispose of it by will, and immediately after this provision he covenants to relinquish all claim to his intended wife's property after her death should she first die, and the covenant sets out in what her separate property consisted, so that the meaning of the parties is not left in doubt; they intended that the property of each in the absence of any particular disposition by will or otherwise should go to those who would take, had no marriage been contemplated or entered into.

There seems to have been no contest as to the administration made in the County Court, but the constructive effect of this contract cannot permit him to retain the property in his own right under the statute as administrator of his deceased wife.

The chancellor having so decreed, his judgment must be affirmed.

The interlocutory part of the judgment we have not considered nor decided.